(74 App. Div. 210.)

BRAUER v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. DEFECTIVE STREET—EVIDENCE—PREVIOUS ACCIDENTS — RES INTER ALIOS ACTA.

In an action against a city for death resulting from the overturning of deceased's wagon, alleged to have been caused by defendant's negligence in leaving bricks piled up in a street, evidence of a previous accident near the same place, which was caused by bricks being in the street, but which was not similar to the one causing deceased's death, and was not shown to have been chargeable to defendant's negligence, was inadmissible, as being of res inter alios acta.

**2. SAME—REVERSIBLE ERROR.**
      Where, in an action against a city for death caused by the overturning of a wagon, the questions of defendant's negligence and plaintiff's contributory negligence were close, the improper admission of evidence of a previous accident, near the same place, was reversible error, as being necessarily harmful.

Appeal from trial term, New York county.

Action by Frederick P. Brauer, administrator of Henry Kammer, against the city of New York and Bart Dunn. From a judgment against defendant Dunn, he appeals. Reversed.

The action is brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by negligence on the part of the defendants in maintaining that part of Broadway north of Kingsbridge and south of Mosholu's Hotel in a dangerous condition, whereby the delicatessen wagon of which he was the driver was overturned upon him on the night of November 20, 1900. The defendant Dunn was joined as party defendant with the city for the reason that he at the time was conducting work on a sewer under contract with the city at the place of the accident. That portion of Broadway had been macadamized in the center, and on either side there were car tracks, but the south-bound tracks on the west side of the street were in disuse, owing to the digging of the sewer, the trench running along the westerly side of the street, and there being just west of it, for the distance of about a block, a long tier or pile of bricks, upon which were placed a row of lights. At the northerly end of this row there were rocks from blasting, which extended out into the street, and almost up to the car track on the east side of the road, so that carriages at that point were obliged to drive upon the track. Further south, however, there was a space between the easterly track and the pile or tier of brick sufficiently wide to permit carriages to proceed, and thus to pass a car upon the easterly track. From the pile of rocks at the northerly end there was a downward grade south to the place where the accident occurred, and it was testified that the contractor had for some weeks permitted water pumped from the sewer to run down between the car tracks, where there was no macadam, and the result was that mud was formed so that wheels would sink therein to the hubs, and at the place of the accident the hole was three feet deep, and water had accumulated. It was also testified that for some time prior to the accident brick had been scattered along the way between the tier of brick and the track, and in this connection one witness was permitted, under exception, to state that, during the three weeks prior to this accident, he had an accident at that particular spot from jostling of the wagon, but such accident was not serious. Further, the plaintiff gave evidence that at about 6 o'clock of this day two loads of brick were dumped in this vicinity between the track and the tier, and it was testified that when the wagon was found there was such a pile of brick directly west of it, the brick extending down to within 18 inches of the track, and being at one place 3 feet high. One witness says the pile was three or four bricks high. The driver of the delicatessen wagon was a young and active man, and it was testified that, when he left the hotel about 6 o'clock, he was perfectly sober. The night was dark. The first knowledge of the accident was obtained when the motorman of a north-bound car saw ahead of him something near the track. He left the car, and approached the dark spot, lighting matches as he went, in spite of which he tumbled over the brick in the roadway. He found two horses standing attached to the overturned wagon, which was lying on its left side, headed south. The upper part of the left wheels were extending over the westerly track, and the hubs resting in the mud. The wagon was provided with a top, and under this top, lying on his back in the mud hole in the center of the track, with his head towards the north and his feet extending beyond the front of the wagon, was the driver, dead. As the wagon was being righted, two other wagons passed to the west of it, straddling the pile of brick as they went by. The delicatessen wagon had not been dragged, but that it came over with force was shown, not

only by the death of the driver, but by the fact that it was heavily loaded, and its contents were thrown out into the street. The jury upon the evidence found in favor of the plaintiff against the defendant Dunn, and exonerated the city. From the judgment entered, the defendant Dunn appeals.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, McLAUGHLIN, and INGRAHAM, JJ.

H. Snowden Marshall, for appellant.
Joseph Beihilf, for respondent.

O'BRIEN, J. It is not our intention to express any opinion upon the merits, or to repeat the facts, further than to show that the two questions of the negligence of the defendant and the freedom from negligence of the plaintiff's intestate, which the jury were called upon to determine, were close, and any incompetent evidence admitted which could affect the jury would for that reason be necessarily harmful. No one saw this accident, and the inferences which the jury were called upon to draw were supplied solely from the position of the body under the wagon and the condition of the roadway at the place where the accident occurred. The plaintiff suggested two causes, for both of which it was claimed the defendant would be responsible,—one the rut in the road, and the other the bricks which were permitted to litter the roadway, and which the defendant was intending to use in connection with his contract for building the sewer along such roadway.

It appeared from the evidence that the accident did not occur at the place where the rut in the road was located, for the wheels of the wagon extended west of the track, and the plaintiff finally rested upon the claim that the accident was caused by bricks which were allowed to be placed in the roadway. As to how long prior to the accident these bricks were placed there, or by whom, does not appear; but the inference which it is claimed could be drawn from the fact of their presence in the roadway is that they were intended for and were delivered to the defendant. Upon this branch of the case the court charged that "there was no direct evidence that the brick in question had been placed in that part of the roadway by the defendant." It is conceded, however, that it was intended to use brick in the sewer, and for that purpose, for some time prior to the accident, bricks had been carted there daily, and piled in tiers along the road, and it was testified that for a considerable period some of the brick had been strewn along between the pile and the track, and that just before the accident two loads had been dumped in the roadway near the spot. The record is equally barren of any direct evidence that it was the bricks that caused the upsetting of the wagon. The contention, therefore, of the appellant is that the jury, instead of being presented with evidence from which legal inferences could be drawn, were allowed to speculate as to what caused the accident, and were permitted to guess whether or not it was caused by something for which the defendant was responsible.

Assuming, for the sake of argument, but without deciding, that the proof offered was sufficient to support the plaintiff's case, it will be seen that incompetent evidence tending to show that a prior accident

had happened in this vicinity, which was caused by bricks, was neces-sarily harmful, because it could not but have had great influence with the jury. Over the objection and exception of the defendant, a witness was permitted to testify that three weeks prior to the acci-dent here in question he met with an accident at the same spot, which he describes as 20 feet north of telegraph pole No. 631, near the Albany post road. Unless it could be shown that such an accident, three weeks before, was due to a like cause, and was one for which the defendant was responsible, it was clearly incompetent. But no reason is given for injecting the issue of another prior and totally different accident into the case, for it is clearly res inter alios acta. Its only purpose was to prejudice the jury against the defendant by the suggestion that perhaps he might be the responsible cause of the prior accident, and was reckless in his use of the roadway.

For the error in admitting this incompetent evidence the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.